FRUTO RAMOS TORRES, demandante y apelante, *v.* RAFAEL BUSCAGLIA, TESORERO DE PUERTO RICO y EL MUNICIPIO DE CAGUAS, demandados y apelados.

Núm. 8657.—*Sometido:* Noviembre 12, 1943. *Resuelto:* Marzo 6, 1944.

R. *Cuevas Zequeira*, abogado del apelante; *Hon. Procurador General Interino M. Rodríguez Ramos* y *A. E. Franco Cabrero, Procurador Auxiliar*, abogados del Tesorero apelado; *Abelardo Román Font* y *Federico E. Virella*, abogados del Municipio apelado.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del Tribunal.

La cuestión envuelta en este recurso es la constitucionalidad de la Ley núm. 174 de 13 de mayo de 1941,(¹) que impuso una contribución de dos por ciento sobre el valor de los solares que el municipio de Caguas cedió en usufructo a

---

(¹) La referida ley, en lo pertinente, dice así:

"Artículo 1.—Por la presente se autoriza e impone una contribución por el uso de todo solar cedido en usufructo por el Municipio de Caguas en su zona urbana. Esta contribución especial por el uso de los solares será del dos (2) por ciento del valor tasado de los mismos según la tasación que hará el Tesorero de Puerto Rico, y será pagada por los usufructuarios a beneficio del Municipio de Caguas para los fines que adelante se expresan; *Disponiéndose,* que no se interpretará esta Ley en el sentido de privar a los contribuyentes de la exención concedida a los mismos en las leyes sobre contribución sobre la propiedad. La contribución se impondrá sobre el exceso del valor de cada solar, después de descontar la exención que le concede la ley a los contribuyentes, a menos que tal exención haya sido descontada ya al computar la contribución sobre otras propiedades. Si el valor del solar no excediera de la exención y ésta no se ha computado ya en la imposición de otras contribuciones, el usufructuario no tendrá que pagar la contribución que se impone en la presente.

"Artículo 2.—El Tesorero de Puerto Rico procederá a hacer una tasación general de los solares del Municipio de Caguas, en la zona urbana, que hayan sido cedidos en usufructo, e impondrá y cobrará la contribución sobre el valor tasado de los mismos; tal como se dispone en la presente, a beneficio del Municipio de Caguas, por el año 1941–42 y cada año subsiguiente; y del producto de la contribución, retendrá para el Tesoro Insular un cinco (5) por ciento de la misma para cubrir los gastos de tasación de los solares y la imposición y cobro de la contribución, y el noventa y cinco (95) por ciento de la misma lo remesará al Municipio de Caguas, mensualmente, según se vaya recaudando, sin que pueda el Tesorero hacer retenciones de esta contribución.

"Artículo 3.—El producto de esta contribución lo invertirá y dedicará el Municipio de Caguas única y exclusivamente a la construcción, reparación, alineación, pavimentación, embreado, arbolado, conservación y sostenimiento de calles de la zona urbana de Caguas y a mejoras, reparación, conservación, y sostenimiento del Parque Palmer de Caguas. El producto de la contribución ingresará en un fondo especial que no podrá ser usado para otros fines.

"Artículo 4.—El Municipio de Caguas, por ordenanzas de la Asamblea Municipal aprobadas por el Alcalde, aplicará el producto de la contribución periódicamente, según vaya ingresando."

vecinos de aquella ciudad. El caso fué sometido por estipulación a base de los hechos alegados en la demanda y en la contestación. La corte de distrito de San Juan dictó una sentencia declaratoria sosteniendo la constitucionalidad de la ley. La contención del contribuyente apelante está predicada: (*a*) en que la ley en cuestión niega a los contribuyentes usufructuarios de solares de la ciudad de Caguas la igual protección de las leyes, por cuanto no imponiéndose esa contribución sobre solares cedidos en usufructo en otros municipios de la Isla de Puerto Rico, se crea un discrimen en contra de los usufructuarios de solares de Caguas, y que por tal circunstancia la referida Ley núm. 174 carece del requisito de uniformidad exigido por el párrafo 22 del artículo 2 de la Ley Orgánica; (*b*) en que dicha ley infringe el párrafo 5 del artículo 2 de la Ley Orgánica porque menoscaba el valor de los contratos originalmente celebrados entre el municipio de Caguas y los usufructuarios de solares, toda vez que según el demandante impone a los usufructuarios condiciones distintas de las pactadas al celebrarse el contrato de usufructo entre el municipio de Caguas y dichos usufructuarios; y (*c*) en que dicha ley es confiscatoria porque en el supuesto de que los usufructuarios de solares no pudieran satisfacer el tributo que la ley impone, dichos usufructuarios tendrían que responder del mismo con su propiedad particular, que podría ser embargada y vendida en pública subasta para el pago de dicha contribución, no obstante haber sido adquirido el usufructo de dichos solares sin habérsele impuesto como condición el pago de tributo alguno.

Los solares afectados por la Ley núm. 174 los adquirió el Municipio de Caguas en parte por donación de una parcela de terreno de ochenta y una cuerdas que le fué hecha en el año 1819 para la fundación de la ciudad, y los demás los adquirió el municipio por compra en distintas ocasiones. Hasta la fecha en que se aprobó la citada ley dichos solares no habían pagado contribuciones. Estimó la

Asamblea Legislativa que era conveniente y justo que esos solares compartiesen con la propiedad privada el sostenimiento del gobierno municipal de Caguas y dispuso la contribución especial que ya conocemos. Prescribió en el artículo 3 de la ley que el producto de esa contribución lo invertiría y dedicaría el Municipio de Caguas única y exclusivamente a la construcción, reparación, alineación, embreado, arbolado, conservación y sostenimiento de calles de la zona urbana de Caguas y a mejoras, reparación, conservación y sostenimiento del Parque Palmer de dicha ciudad. De suerte que la contribución en controversia es de carácter local y para beneficio exclusivo de una área determinada, la zona urbana del Municipio de Caguas.

La Ley Orgánica no prohibe a la Asamblea Legislativa de Puerto Rico la aprobación de leyes especiales. Por el contrario, el artículo 37 prescribe que la autoridad legislativa se extenderá a todos los asuntos de carácter legislativo que no sean legalmente inaplicables, y en el artículo 2 la propia Ley Orgánica dispuso que "Todo dinero que se recaude por contribución impuesta o fijada para un fin especial, será considerado como un fondo especial en el Tesoro, y desembolsado para dicho fin únicamente, a no ser cuando medie la aprobación del Presidente de los Estados Unidos. Y en el caso de *Puerto Rico* v. *Shell Co.*, 302 U. S. 253, 261, el Tribunal Supremo de los Estados Unidos, después de referirse a la sección 32 de la Ley Foraker y a la 37 de nuestra vigente Ley Orgánica, comentando sobre los amplios poderes que la Ley Orgánica concede a nuestra Asamblea Legislativa, dice:

"El propósito perseguido por la Ley Foraker y por la Ley Orgánica fué conceder a Puerto Rico completos poderes de propia determinación local, con una autonomía semejante a la de los estados y territorios incorporados. [Citas.] . . . El poder de imponer contribuciones y el de aprobar y hacer cumplir leyes, y otros poderes característicamente gubernamentales, fueron concedidos. Y en lo que concierne a asuntos locales, como ya hemos demostrado con

respecto a territorios continentales, le fueron concedidos poderes legislativos, casi tan amplios, si no tan amplios, comó los ejercitados por las legislaturas estatales.''

Más recientemente, en el caso de *Puerto Rico* v. *Rubert Co.,* 309 U. S. 543, el mismo tribunal, ratificando lo dicho en el caso de *Puerto Rico* v. *Shell Co.,* supra, por voz de su Juez Asociado Sr. Frankfurter se expresó así:

"La amplitud de la Autonomía local conferida por el Congreso a la Asamblea Legislativa fué elucidada tan recientemente y de manera tan completa en *Puerto Rico* v. *Shell Co.,* . . . que es innecesario repetirlo ahora. Bastará decir que la opinión en aquel caso enfatizó la amplitud del poder que el Congreso concedió a Puerto Rico al prescribir en la §37 de la Ley Orgánica de 1917 que 'la autoridad legislativa . . . se aplicará a todos los asuntos de carácter legislativo que no sean localmente inaplicables.' '' (Pág. 547.)

▆▆▆▆ Sostiene el apelante que como la contribución especial se impuso exclusivamente a los usufructuarios de solares de la zona urbana del Municipio de Caguas, y no a los usufructuarios de solares de los otros municipios, dicha legislación no es uniforme y constituye un discrimen contra los usufructuarios de los solares de la zona urbana del Municipio de Caguas, privándoles así de la igual protección de las leyes.

Establecido que la autoridad legislativa conferida por el Congreso a la Asamblea Legislativa de Puerto Rico es casi tan extensa, si no tan extensa, como la autoridad de las legislaturas de los estados, si logramos demostrar que éstas pueden ejercer y como cuestión de hecho ejercitan el mismo poder que por la Ley núm. 174 ejercitó la Asamblea Legislativa de Puerto Rico, no habrá duda alguna de que la ley impugnada es constitucional.

En el caso de *Ft. Smith Light Co.* v. *Paving Dist.,* 274 U. S. 387, la Asamblea Legislativa de Arkansas pasó una ley imponiendo a la apelante, una compañía de tranvías urbanos, la obligación de pavimentar aquella parte de ciertas calles de la ciudad de Fort Smith, Arkansas, comprendida entre sus

railes. La ley se aplicaba exclusivamente a la compañía apelante, a pesar de que en el Estado de Arkansas habían otras compañías de tranvías urbanos. Fort Smith Light and Traction Company, al cobrársele de acuerdo con la misma ley el importe de dicha pavimentación por no haberla hecho ella, alegó, como lo hace el aquí apelante, que como habían otras compañías de tranvías urbanos en el Estado, algunas de las cuales operaban sus tranvías bajo permisos indeterminados igual que el de la apelante, los cuales no les exigían pavimentar calles, la ley en cuestión le negaba la igual protección de las leyes. Resolviendo la contención de la apelante, dijo el tribunal.

"La Enmienda Catorce no prohibe legislación por el mero hecho de que sea especial, o esté limitada en su aplicación a una determinada subdivisión geográfica o política del estado. [Numerosas citas.] Si un estado puede delegar en un municipio el poder de requerir pavimentación de calles a un tranvía urbano, [cita], no comprendemos por qué razón, por medio de una ley de la Asamblea Legislativa no pueda el estado exigir igual requisito limitándolo a un solo municipio.

⁂          ⁂          ⁂          ⁂          ⁂          ⁂          ⁂

"Nada encontramos en el récord que nos permita decir que la legislación que ahora nos ocupa fuere innecesariamente arbitraria o irrazonable, o que justifique desechar el criterio de la corte estatal que sostuvo su razonabilidad." (Págs. 391, 392.)

Véase al mismo efecto la obra del Profesor Charles K. Burdick, *The Law of the American Constitution*, pág. 595, sección 280.

A nuestro juicio las autoridades citadas demuestran sin lugar a dudas que nuestra Asamblea Legislativa, al igual que la de los estados, puede ejercitar válidamente la facultad que ejercitó en la referida ley.

Es evidente que las personas afectadas por la contribución especial se han de beneficiar con la mejora que habrán de tener las calles y el Parque Palmer de la ciudad de Caguas. Además la contribución es uniforme para todos los

usufructuarios, quienes pagarán por dicho concepto el dos por ciento del valor de sus respectivos solares.

De los autos no aparece que el Municipio de Caguas, al recibir la donación de las ochenta y una cuerdas de terreno de que hemos hecho mención, y mucho menos al ceder el usufructo de los solares, lo hiciera sujeto a la condición de que dichos solares estarían exentos de contribución. Pero asumiendo, a los efectos del argumento solamente, que tal condición pudiera limitar el amplísimo poder que hemos visto tiene nuestra Asamblea Legislativa para imponer contribuciones, no vemos cómo la Ley núm. 174 que nos ocupa, puede menoscabar condiciones que no existen en el contrato de usufructo, a menos que se quiera incurrir en el manifiesto absurdo de sostener que dicha contribución equivale a un canon de arrendamiento de dichos solares.

█ Finalmente sostiene el apelante que la Ley núm. 174 es confiscatoria porque si deja de pagar la contribución por ella impuesta ·se expone a que su propiedad particular sea vendida en pública subasta para pagarla. Bastará decir que ese es el riesgo a que se expone todo contribuyente y no por ello podrá decirse que la contribución sea confiscatoria.

*Procede por lo expuesto la confirmación de la sentencia.*